# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GUSTAVO PEREZ, | ) |
|     Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 18 C 1369 |
| OVER-EASY, INC., d/b/a LA ESCAROLA, JOSEPH MONDELLI, and ARMANDO VASQUEZ, | ) ) ) ) ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Gustavo Perez has sued his former employer, Over-Easy, Inc., d/b/a La Escarola (La Scarola),[1] its president Joseph Mondelli, and its manager Armando Vasquez, for violations of the Fair Labor Standards Act (FLSA). Perez worked for La Scarola as a restaurant server. He alleges that the defendants violated the tip-credit and retaliation provisions of the FLSA. The defendants have moved for summary judgment. For the reasons stated below, the Court grants the defendants' motion.

## Background

    The following facts are undisputed except where otherwise noted. Over-Easy is an Illinois corporation that operates a fine-dining Italian restaurant in Chicago called La Scarola. Mondelli serves as the corporation's president, and Vasquez manages the restaurant. From approximately 2012 until 2017, Perez worked as a server there.

---

[1] The Court refers to the business by the name used by the defendants.

As at many restaurants, servers at La Scarola earn wages and tips. During the relevant timeframe, the restaurant operated a tip pool through which it required servers to pay a percentage of their tips to the bartender and busboys each night. Before starting his job, Perez knew that La Scarola required him to contribute to the tip pool. Perez Dep., Ex. 4 to Defs.' Statement of Undisputed Material Facts (SUMF), dkt. no. 45-4 at 52:5–14. He testified that he paid 10 percent of his tips to the bartender and 20 percent to the busboys. *Id.* at 21:3–8.[2] Unlike tips paid in cash, credit card tips would take a few days to process. Perez testified that on nights when he did not earn enough in cash tips to cover the amount owed to the bartender and busboys, he had to pay them with his own, out-of-pocket cash. *Id.* at 103:5–18.

At the end of each night, the servers calculated and recorded their tips, including their total earned tips, their cash tips, and the tips they paid to the bartender and busboys. A few days after servers earned credit card tips, La Scarola gave them a check payment for those tips. After each weekly pay period, it paid them their hourly wage by issuing a separate check.

La Scarola deducted tax withholdings from its servers' paychecks. Perez testified that La Scarola taxed the total amount of tips he earned, rather than taxing only the tips he retained after paying the bartender and busboys. *E.g.*, *id.* at 16:16–22. As a result, he claims, La Scarola deducted more taxes than he owed. *E.g.*, *id.* But despite this alleged over-taxation, Perez testified that he still earned minimum wage. *Id.* at 16:23–25.

---

[2] Although La Scarola required him to pay only 7 percent to the bartender, Perez testified that, like many servers, he paid a greater percentage to encourage the bartender to provide better service to his tables. *Id.* at 51:11-52:4.

2

The parties dispute whether Perez complained to Vasquez or any other supervisor about the allegedly excessive tax withholdings. Perez testified that he initially did not "do anything" about the alleged over-taxation because he did not want to lose his job. *Id.* at 58:9–13. But at some point, Perez said, he asked Vasquez for his money and "why they were taking" his money. *Id.* at 58:14–17. He told Vasquez that he did not want to be taxed "on the tips [he] wasn't making." *Id.* at 110:13–16. Vasquez has stated in an affidavit that Perez never complained to him "about not being paid properly or having too much in taxes withheld from his pay." Vasquez Decl., Ex. 1 to Defs.' SUMF, dkt. no. 45-1 at ¶ 15.

In 2017, Vasquez fired Perez. The defendants say that Perez was fired for insubordination because he refused to follow Vasquez's direction to assist another server in cleaning a table and became argumentative. Perez contends that this is a pretext and that the real reason for his termination was retaliation for his complaints about his pay.

Perez sued the defendants for violations of the FLSA, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. The defendants moved to dismiss Perez's claims, and the Court granted the motion to dismiss for all but the FLSA claims. The remaining claims are count 1, alleging violations of the FLSA's tip-credit provision, 29 U.S.C. § 203(m), and count 2, alleging a violation of the FLSA's retaliation provisions, *id.* § 215(a)(3). The defendants have moved for summary judgment.

## Discussion

"Summary judgment is proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Chi. Transit*

*Auth.*, 926 F.3d 881, 886 (7th Cir. 2019) (internal quotation marks omitted). In considering a motion for summary judgment, the Court construes all facts and draws all reasonable inferences "in favor of the party against whom the motion under consideration was filed." *Id.* The party opposing summary judgment "must present specific facts showing that there is a genuine issue for trial; inferences that rely upon speculation or conjecture are insufficient." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630–31 (7th Cir. 2017) (internal quotation marks omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

**A.    Tip credit**

The FLSA "is designed to protect workers from the twin evils of excessive work hours and substandard wages." *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001). Toward that end, it requires employers to pay their employees a minimum wage for each hour of work performed. 29 U.S.C § 206. Subject to certain requirements, an employer may pay a reduced hourly wage to a "tipped employee"—one who "customarily and regularly receives more than $30 a month in tips"—by crediting the employee's tips, up to a certain amount, toward his minimum wage. *Id.* §§ 203(m) & (t). An employer may take this tip credit only if it has informed the tipped employee of the relevant subsection of the FLSA. *Id.* § 203(m)(2). Additionally, "all tips received by such employee" must "have been retained by the employee," although the statute does not prohibit the pooling of tips among tipped employees. *Id.*

The Department of Labor has promulgated regulations regarding tip credits. One regulation identifies the specific information that an employer must disclose to "its tipped

4

employees in advance of the employer's use of the tip credit." 29 C.F.R. § 531.59. Specifically, an employer must inform each tipped employee of the "amount of cash wage" the employee will receive, the difference between this amount and the minimum wage (i.e., the tip credit claimed by the employer), that the employee must retain all tips he earns "except for a valid tip pooling arrangement," and that "the tip credit shall not apply to any employee who has not been informed of these requirements." *Id.* Another regulation governs tip pooling, a practice where employees split tips, "as where waiters give a portion of their tips to the busboys." *Id.* § 531.54. The regulation states that "an employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose." *Id.*

Lopez contends that the defendants violated the tip-credit provision by failing to give the requisite notice and by taxing all tips that servers earned, including those paid into the tip pool. The Court addresses each issue separately.

   **1.    Notice**

Perez argues that the defendants violated the FLSA by claiming a tip credit without providing him proper notice. He contends that, in advance of an employee's first day of work, an employer must explain its tip pool practices. Specifically, he argues that the defendants owed him advance notice of their expectation that he would contribute his own cash to the tip pool to cover for credit card tips that had not yet been processed. Perez also contends that he should have received advance notice that the defendants would tax him on all tips he earned, including those paid to the bartender and busboys. The defendants argue that an employer must provide advance notice to an employee of

5

only a tip pool's existence—not how it is operated.

The FLSA and the pertinent Department of Labor regulations do not require employers to provide advance notice to tipped employees of their tip pool or taxation practices. 29 U.S.C. § 203; 29 C.F.R. §§ 531.54, 531.59. As indicated above, an employer is required to provide advance notice of specific items of information enumerated in the regulation and listed earlier in this opinion. 29 C.F.R. § 531.59. That information does not include tip pool or taxation practices. *See id.* The advance notification requirement serves "to inform affected employees of the employer's *intent* to claim the tip credit," *Perez v. Lorraine Enterprises, Inc.*, 769 F.3d 23, 27 (1st Cir. 2014) (emphasis added), rather than to explain the employer's particular tip pool and taxation practices.

Nor does the regulation governing tip pooling require the type of notice that Perez contends he should have been given. The regulation states that "an employer must notify its employees of any required tip pool contribution amount." 29 C.F.R. § 531.54. It does not require an employer to provide that notification in advance of the employee's first day or to explain how he will be taxed or how he will contribute to the tip pool. *See id.*

Viewing the facts in the light most favorable to Perez, no reasonable jury could find that the defendants claimed a tip credit without providing him with the requisite notice. Perez provides no evidence suggesting that the defendants failed to provide advance notification of the information required by 29 C.F.R. § 531.59, including their intent to claim a tip credit and the existence of a tip pool among their tipped employees. During his deposition, Perez confirmed that he knew there would be "tip deductions"

6

when he started working for the defendants. Perez Dep., Ex. 4 to Defs.' SUMF, dkt. no. 45-4 at 52:5–14. Nor does Perez dispute that the defendants informed him of the required tip pool contribution amount, as required by 29 C.F.R. § 531.54. Perez's arguments—that he lacked advance notice of the defendants' tip pool and taxation practices—miss the mark, because the statute and regulations do not require advance notice of those practices. Accordingly, the defendants are entitled to summary judgment on the question of the adequacy of notice under the FLSA's tip-credit provision.

### 2. Taxation

Perez also contends that the defendants claimed an unauthorized tip credit because they withheld more than he owed in taxes. Specifically, he asserts that the defendants improperly withheld taxes from the total tips he earned rather than from the tips he retained after paying the busboys and the bartender.

This tax-withholding practice does not constitute a violation of the FLSA, however, unless it results in an employer claiming a tip credit for more than the tips the employee ultimately received. 29 U.S.C. § 203(m)(2). In other words, the alleged taxation practice would be a violation of the FLSA only if the defendants claimed an excessive tip credit, thereby reducing Perez's income below the minimum wage. *Cf. Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("[T]he FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold."); *Labriola v. Clinton Entm't Mgmt., LLC*, No. 15 C 4123, 2016 WL 1106862, at *4 (N.D. Ill. Mar. 22, 2016) ("Because the FLSA only addresses minimum and overtime compensation, . . . the statute does not

7

provide a cause of action for plaintiffs seeking the return of additional tip money from their employer or others."); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 656 (N.D. Ill. 2007) (denying summary judgment where there were questions of fact regarding whether an employer paid its tipped employee less than the minimum wage and deducted more than he owed in taxes).[3]

Perez asserts, citing *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992), that even an employee who earned minimum wage may seek unpaid tips as a remedy under the FLSA. *Martin* involved an action brought by the Secretary of Labor against a corporation and its owners for FLSA violations. *Id.* at 1321. The court did not indicate that a private plaintiff has a cause of action for FLSA violations unrelated to minimum wage or overtime compensation. *See generally id.*; *see also Labriola*, 2016 WL 1106862, at *4 (the FLSA's tip-credit provision "does not require an employer to return tip money to an employee where the employer does not claim to have used those tips to satisfy the employees' minimum wage").

Perez provides no evidence suggesting that the defendants' alleged taxation practice reduced his income below the minimum wage. At all relevant times the minimum wage was $7.25 per hour. 29 U.S.C. § 206. During his deposition, he testified that, despite the alleged over-taxation of his tips, he nonetheless earned minimum wage. Perez Dep., Ex. 4 to Defs.' SUMF, dkt. no. 45-4 at 16:23–25. That testimony appears to be confirmed by a summary of over a dozen paychecks issued to Mr. Perez between August 24, 2016 and November 23, 2016, which shows that, on

---

[3] Because Perez's claims in this case involve solely the FLSA, the Court need not address the defendants' argument that employees have no private cause of action under other statutes for employers' excessive tax deductions.

8

average, he earned more than approximately $48 per hour. Ex. B to Pl.'s SUMF, dkt. no. 46-1. Even accounting for the payments of 30% of his tips to the bartender and busboys, as well as the allegedly excessive tax withholdings, the evidence suggests that Perez would have earned more than $7.25 per hour during that timeframe. Because he has not shown that the allegedly excessive taxes reduced his earnings below the minimum wage, Perez has not provided evidence in support of a finding that the defendants' taxation practice violated the FLSA's tip credit provision.

In sum, the Court concludes that the defendants are entitled to summary judgment for Perez's claim regarding violations of the tip-credit provision.

**B.     Retaliation**

The FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the statute. 29 U.S.C. § 215(a)(3). To establish a prima facie case of retaliation under the FLSA using direct evidence, a plaintiff must show "(1) that he engaged in protected expression; (2) that he suffered an adverse employment action; and (3) that a causal link existed between the protected expression and the adverse action." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012).

With respect to the first element, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). An employee may make a protected complaint

9

orally or in writing. *Id.* at 17.

An employee's generalized complaints about his wages or hours constitute an assertion of his FLSA-protected rights only if he frames his complaints in terms of potential illegality. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 895 (7th Cir. 2018) (observing that, in cases finding employees' generalized complaints to constitute protected expression, the complaints were "readily recognizable as an objection that a particular employment practice regarding wages or hours was illegal"). *Compare Garcia v. Draw Enters. III, LLC*, No. 17 C 4477, 2018 WL 6045206, at *8 (N.D. Ill. Nov. 19, 2018) (a reasonable jury could find that employee's complaint constituted protected expression where she complained to her employer on multiple occasions that her employer was violating the law by not providing overtime pay) *with Silver v. Townstone Fin., Inc.*, No. 14 C 1938, 2016 WL 4179095, at *5 (N.D. Ill. Aug. 8, 2016) (no reasonable jury could find that employee's complaints constituted protected expression where he "could not recall the particulars of these communications beyond the general gist that he was working extra time" and deserved to be paid for it, and did not communicate that he had a statutory right to receive overtime pay).

Even viewing the evidence in the light most favorable to Perez, no reasonable jury could conclude that he made any complaints or statements suggesting that the restaurant's practices ran afoul of the law in any way. Perez testified that "[a]t first" he did not "do anything" to address the allegedly excessive deductions because he did not want to lose his job. Perez Dep., Ex. 4 to Defs.' SUMF, dkt. no. 45-4 at 58:9–17. Eventually he asked Vasquez for his money, he testified, and asked "why they were taking" his money. *Id.* Perez testified that he told Vasquez that he did not want to be

taxed "on the tips [he] wasn't making." *Id.* at 110:13–16.  Crucially, Perez has offered no testimony or other evidence that he told Vasquez that the restaurant's taxation practice was illegal, that he planned to sue, or that his rights had been violated.  He has provided no evidence indicating that he framed his complaint in terms of illegality.  In short, Perez has offered no evidence from which a reasonable jury could find that he made a complaint that would lead a reasonable employer to understand that he was invoking his rights under the FLSA.  The defendants are entitled to summary judgment on the retaliation claim on this basis, and as a result the Court need not address their remaining arguments.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [dkt. no. 43] and directs the Clerk to enter judgment in favor of defendants and against plaintiff.

                                                                                      _____
                                                                                      MATTHEW F. KENNELLY
                                                                                      United States District Judge

Date:  October 9, 2019